1

2

3

4

5   # UNITED STATES DISTRICT COURT

6   ## EASTERN DISTRICT OF CALIFORNIA

7   EDDIE LYNN PETERSON,                    )   1:08-CV-01895 JMD HC
                                            )
8                        Petitioner,        )   ORDER DENYING PETITION FOR WRIT OF
                                            )   HABEAS CORPUS
9        v.                                 )
                                            )   ORDER DIRECTING CLERK OF COURT TO
10  WARDEN P.L. VASQUEZ,                    )   ENTER JUDGEMENT
                                            )
11                       Respondent.        )   ORDER DECLINING TO ISSUE CERTIFICATE OF
    _____        )   APPEALABILITY

12

13          Eddie Lynn Peterson ("Petitioner") is a state prisoner proceeding *pro se* with a petition for

14  writ of habeas corpus pursuant to 28 U.S.C. § 2254.

15                              **PROCEDURAL HISTORY**

16          Petitioner is currently in the custody of the California Department of Corrections and

17  Rehabilitation pursuant to a jury verdict in 2006 finding Petitioner guilty of possessing cocaine base

18  for sale (Cal. Health & Safety Code § 11351.5). (Answer at 1; Pet. at 2). Petitioner was sentenced to

19  an aggregate prison term of nineteen years following a bifurcated trial in which the jury also found

20  true the special allegations that Petitioner had suffered three prior prison terms within the meaning of

21  California Penal Code section 667.5(b) and that Petitioner had a prior serious felony second degree

22  robbery (Cal. Penal Code §§ 667(c)-(j) and 1170.12(a)-(e)) and two prior drug crimes (possession for

23  sale of cocaine base) (Cal. Health & Safety Code section 11370.2(a)). (Answer at 1; Lod. Doc. 4 at ).

24          Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District.

25  (*See* Lod. Doc. 1). The appellate court issued a reasoned opinion on January 8, 2008, affirming

26  Petitioner's conviction and enhancements. (*See* Lod. Doc. 4).

27  \\\

28  \\\

1    Petitioner then filed a petition for review to the California Supreme Court, which the court

2    denied.  (*See* Lod. Docs. 5, 6).

3    Petitioner also filed a petition for writ of habeas corpus to the California Supreme Court,

4    which was denied.  (*See* Lod. Docs. 7, 8).

5    On December 10,  2008, Petitioner filed the instant federal petition for writ of habeas corpus.

6    On June 18, 2009, Respondent filed a response to the petition.  Petitioner filed a traverse to

7    the answer on August 11, 2009.

8    On January 20, 2010, Petitioner filed his first amended petition.

9    Consent to Magistrate Judge Jurisdiction

10    On December 24, 2008, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1),

11    to have a magistrate judge conduct all further proceedings, including the entry of final judgment.

12    (Court Doc. 5).  Respondent consented to the jurisdiction of a magistrate judge on June 26, 2009.

13    (Court Doc. 18).  On March 17, 2010, the case was reassigned to the undersigned for all further

14    proceedings.  (Court Doc. 28).

15    **FACTUAL BACKGROUND**[1]

16
17    **I.Prosecution Case**

18    On March 10, 2006, Officer Patrick Mara, a member of the Bakersfield Police
Department's special enforcement unit, was on a stakeout of a motel in a high
narcotics activity area when he noticed a Black male pull up in a white Cadillac, enter

19    room 108 of the Little Sweden Motel, exit the room a short time later, and drive away.
Officer Mara viewed this as consistent with narcotics activity so he radioed other

20    officers in his unit.

21    The Black male was stopped and searched, and he was found to possess
off-white pieces of a chunky substance which were consistent with cocaine base.

22
23    Based upon this information, Officer Mara and other officers went to room
108 of the Little Sweden Motel where they apprehended Peterson and his companion,
Antowette Gonzales. The officers searched the room and found a plastic baggie

24    containing suspected cocaine base on top of a black purse that was inside a larger

25
26    [1]These facts are derived from the California Court of Appeal's opinion issued on August 1, 2006.  (*See* Lod. Doc.

27    4).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is
presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1);
*see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004).
Here, Petitioner has not presented evidence that would permit the Court to set aside the presumption of correctness that has

28    attached to the State court's factual findings.

white purse next to the bed. They also found a cell phone and $173 in small denominations in Peterson's right front pant pocket. The pieces of suspected cocaine base in the baggie were individually packaged into 16 smaller baggies, and a small amount of marijuana was also in the large baggie. The total package weight was just over 17 grams. Additionally, according to Officer Mara, the cellphone rang continuously once or twice every 30 seconds during the 30 or so minutes the officers were in the motel room.

Gonzales told the officers that the black purse under the baggie of drugs was hers, but that she did not know anything about drugs and she had just been a visitor to the motel room. Officer Mara met with the owner of the motel and received a copy of the registration card for the room which showed that Peterson and Gonzales were both listed on the card.

### II. Defense Case

Peterson's brother testified for the defense. According to Peterson's brother, he gave Peterson a ride to the motel at about 1:30 a.m. because Peterson was going to meet a woman there to have sex. Peterson's brother was supposed to pick him up 45 minutes later. However, when Peterson's brother did not hear back from Peterson, he called Peterson's cellphone continuously trying to reach him. Peterson also contended that the drugs belonged to someone else.

(Lod. Doc. 4, Opinion of the California Court of Appeal, Fifth Appellate District, at 2-3).

### DISCUSSION

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  Petitioner is currently incarcerated in Wasco State Prison[2] and Petitioner's custody arose from a conviction in the Kern County Superior Court.  (Pet. at 2).  As Kern County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

[2]Wasco State Prison is located in the city of Wasco, which is within Kern County, California.

1  **II.      ADEPA Standard of Review**

2         On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

3  1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

4  enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499

5  (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97

6  F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by*

7  *Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The

8  instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA,

9  which became effective April 24, 1996.  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the

10  petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief

11  was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as

12  determined by the Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.

13  2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

14         As Petitioner is in custody of the California Department of Corrections and Rehabilitation

15  pursuant to a state court judgment, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's

16  habeas petition.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir.

17  2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection

18  2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state

19  court judgment, even when the petitioner is not challenging his underlying state court conviction'").

20         As a threshold matter, this Court must "first decide what constitutes 'clearly established

21  Federal law, as determined by the Supreme Court of the United States.'"  *Lockyer*, 538 U.S. at 71

22  (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this

23  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of

24  the time of the relevant state-court decision."  *Id*. (quoting *Williams*, 592 U.S. at 412).  "In other

25  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

26  principles set forth by the Supreme Court at the time the state court renders its decision."  *Id*.

27  Finally, this Court must consider whether the state court's decision was "contrary to, or involved an

28  unreasonable application of, clearly established Federal law."  *Lockyer*, 538 U.S. at 72, (quoting 28

U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that

decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court were the only courts to have adjudicated Petitioner's claims. As the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.    Review of Petitioner's Claims

Petitioner presents three claims for relief in his petition for writ of habeas corpus: (1) the admission of hearsay statement was a violation of his Fifth and Sixth Amendment rights; (2) ineffective assistance of trial counsel; and (3) the trial court's imposition of the upper term violated his Sixth and Fourteenth Amendment rights.

#### A.    *Ground One: Hearsay*

In the first ground for relief, Petitioner contends that the admission of co-defendant's hearsay statement was a violation of his right to confront witnesses against him. In response, Respondent contends that this claim is procedurally defaulted, pointing to the California Court of Appeal's decision which denied this claim on the grounds that Petitioner had waived this argument by failing to object at trial. (Answer at 8; Lod. Doc. 4 at ).

A claim is considered procedurally defaulted where the state court invokes a state procedural rule, which is adequate to support the judgment and independent of federal law, to reject a federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991). A state procedural rule is adequate if the rule is sufficiently clear at the time of the default. *Ford v. Georgia*, 498 U.S. 411, 423 (1991). Additionally, the rule must be "firmly established and regularly followed" by the state court. *Id*. at 424-425 (finding that rule announced at time of procedural default is not firmly established); *see Wood v. Hall*, 130 F.3d 373, 377 (9th Cir. 1997) (stating that a rule is inadequate where the rule is selectively applied, ambiguous, or unsettled in the state and is not inadequate merely because the rule entails the exercise of judicial discretion). The procedural rule is independent if it is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983); *see Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (quoting *Coleman*, 501 U.S. at 735 (quoting *Long*, 463

1  U.S. at 1041), in stating "[f]ederal habeas review is not barred is the state decision 'fairly appears to

2  rest primarily on federal law, or to be interwoven with the federal law'").

3         "[P]rocedural default does not bar consideration of a federal claim on either direct or habeas

4  review unless the last state court rendering a judgment in the case 'clearly and expressly' states that

5  its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting

6  *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).  Here, the State court clearly and expressly stated

7  that its denial of Petitioner's hearsay claim rested on Petitioner's failure to contemporaneously object

8  to the error at trial, noting that as the "error was not raised in the trial below, [Petitioner] has

9  forfeited that claim."  (Lod. Doc. 4 at ).

10        As procedural default is an affirmative defense, Respondent bears the burden of pleading and

11  proving that the state procedural bar is adequate and independent while Petitioner bears the interim

12  burden of placing the adequacy of the defense at issue. *Royal v Kernan*, 2009 WL 1034502, *12

13  (E.D. Cal. 2009) (citing *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003)).  Here, Respondent

14  has met that burden by pleading that this claim is procedurally defaulted under California's

15  contemporaneous objection rule.  (Answer at 8-11).  As Respondent notes, the contemporaneous

16  objection rule has been found by the Ninth Circuit to be independent and adequate.  *See Melendez v.*

17  *Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002); *see also Rich v. Calderon*, 187 F.3d 1064, 1069-1070

18  (9th Cir. 1999).  Thus, the burden has shifted to Petitioner to place the adequacy of the

19  contemporaneous objection rule into question as "the scope of the state's burden of proof thereafter

20  will be measured by the specific claims of inadequacy put forth by the petitioner." *Bennett*, 322 F.3d

21  at 584-85.  While Petitioner filed a traverse, Petitioner does not contest the adequacy of the

22  contemporaneous objection rule and thus there are no "specific allegations by the petitioner as to the

23  adequacy of the state procedure." *Id*.  Petitioner has failed to satisfy his interim burden under

24  *Bennett* and the Court must conclude that the contemporaneous objection rule rests on an adequate

25  and independent state procedural ground.

26        A federal habeas court is barred from reviewing Petitioner's claim unless Petitioner can

27  demonstrate cause and actual prejudice or that failure to review Petitioner's claims is necessary to

28  avoiding a miscarriage of justice.  *Coleman*, 501 U.S. at 725; *Bradshaw v. Richey*, 546 U.S. 74,

U.S. District Court
E. D. California

79-80 (2005). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel' efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (finding cause is established by ineffective assistance of counsel but that principles underlying exhaustion requires that the ineffective assistance of counsel claim be raised to state court) (hereinafter "Murray"); *see Stickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (finding cause where the failure to raise a claim resulted from conduct attributable to the prosecutor that impeded trial counsel's access to the factual basis for the claim); *see also McCleskey v. Zant*, 499 U.S. 467, 493-494 (1991) (finding that objective factors that may constitute cause include interference by officials that would make assertion of the claim impracticable, a showing that the factual or legal basis for the claim was not reasonably available, or constitutionally ineffective assistance of counsel under the Sixth Amendment).

Here, Petitioner contends that counsel's ineffective assistance serves as the objective external impediment. "Ineffective assistance of counsel may be cause to excuse a default only if the procedural default was the result of an independent constitutional violation." *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) in noting that counsel's performance must be constitutionally deficient to constitute cause). Even assuming that trial counsel's failure to objection on Confrontation Clause grounds rendered his representation constitutionally inadequate, Petitioner has not established that he was prejudiced by such failure. *See Strickland v. Washington*, 466 U.S. 668, 691-696 (1984); *United States v. Skurdal*, 341 F.3d 921, 925-926 (9th Cir. 2003) (citing *Allen v. Risley*, 817 F.2d 68, 69 (9th Cir. 1987) for the proposition that an error short of ineffective assistance of counsel cannot constitute cause); *see also United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003) (citing *Strickland*, 466 U.S. at 687 in stating, "In order to excuse his procedural default, [Petitioner] must show 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense'"). Petitioner has not shown that there exists a " reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th

Cir. 1995 (quoting *Strickland*, 466 U.S. at 694).  The statement in question was made by Petitioner's

co-defendant.  Co-defendant stated that the black purse was her's but that she did not know who the

drugs belonged to.  This statement does not directly or expressly implicate Petitioner's guilt.  In

addressing Petitioner's ineffective assistance of counsel claim, the California Court of Appeal's

succinctly noted that there was no prejudice resulting from the admission of this statement:

> The two statements did not undermine Peterson's defense that the drugs belonged to
> Gonzales because, even if Gonzales's statements were believed by the jury, the jury
> still could have concluded that the drugs belonged to Gonzales. A jury finding that the
> drugs belonged to Gonzales would have been supported by Gonzales's statement that
> the black purse under the baggie containing the drugs belonged to her. Moreover, the
> two statements at issue are not inconsistent with Peterson's defense that he was in the
> room to have sex with Gonzales since Gonzales did not state that the only reason she
> visited the room was to clean up and shower. Finally, the jury verdict against
> Gonzales, which was supported by other evidence such as the hotel registration card
> showing that the room belonged to Peterson and Gonzales, indicates that the jury did
> not believe Gonzales's testimony.

(Lod. Doc. 4 at ).  Consequently, the Court finds that Petitioner has not shown that his counsel was

ineffective under the *Strickland* standard.

Even if counsels' failure to object sentence amounts to "cause" for the procedural default,

Petitioner has not been prejudiced by the default as Petitioner cannot prevail on his underlying

habeas claim.  *See Murray v. Carrier*, 477 U.S. at 497.  The Confrontation Clause protects a

defendant from unreliable hearsay evidence being presented against him during trial.  *See* U.S.

Constitution, Amendment VI.  The Confrontation Clause of the Sixth Amendment specifically

provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted

with the witnesses against him."  *Id*.  The Sixth Amendment's Confrontation Clause was made

applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Pointer v.

Texas*, 380 U.S. 400, 403-05 (1965).   In *Crawford v. Washington*, 541 U.S. 36 (2004), the United

States Supreme Court held that the Confrontation Clause bars the state from introducing out-of-court

statements which are testimonial in nature, unless "the declarant is unavailable, and only where the

defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59.   The admission

of a non-testifying co-defendant's hearsay confession violates a defendant's rights under the

Confrontation Clause when that statement facially, expressly, clearly, or powerfully implicates the

defendant.  *See Bruton v. United States*, 391 U.S. 123, 135-136 (1968); *Richardson v. Marsh*, 481

U.S. 200, 208 (1987) (limiting *Bruton* to statements that are incriminating on their face or expressly incriminating since statements that only become incriminating when linked with other evidence are inherently less prejudicial).   Under *Bruton*, the statements attested to by Officer Mara, that the black purse was co-defendant's and that co-defendant did not know anything about the drugs on top of the black purse, were not facially or expressly incriminating towards Petitioner's guilt.   To reach the conclusion that the drugs belonged to Petitioner required the jury to rely on additional evidence and thus does not meet the standard set in *Bruton* for a violation of the Confrontation Clause.    Therefore, Petitioner cannot establish that his Confrontation Clause rights under *Bruton* were violated.

Petitioner's Confrontation Clause rights under *Crawford* were implicated by the admission of co-defendant's statement as Petitioner never had an opportunity to cross examine co-defendant and co-defendant's statement was testimonial in nature.   However, Petitioner is not entitled to habeas corpus relief though as the error was harmless under the standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) as the statements did not have a "substantial and injurious effect or influence in determining the jury's verdict."   *See also Forn v. Hornung*, 343 F.3d 990, 999 (9th Cir. 2003) (finding violations under the Confrontation Clause are subject to *Brecht* harmless error analysis of); *see also United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir.2004) (*Crawford* violations are subject to harmless error analysis).   As noted *infra*, the statements by co-defendant disavowed knowledge of the drug's ownership.   Considering the jury returned a guilty verdict against the co-defendant on the possession for sale of cocaine base, the jury obviously did not give any credence to co-defendant's statements.   Thus, the Court finds the statements did not have a "substantial and injurious effect or influence in determining the jury's verdict."   *Brecht*, 507 U.S. at 638.

"Even if a state prisoner cannot meet the cause and prejudice standard, a federal court may hear the merits of [a defaulted claim] if the failure to hear the claim[s] would constitute a 'miscarriage of justice.'" *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992); *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (reiterating exception for fundamental miscarriage of justice but noting that exception is explicitly tied to petitioner's innocence).   Thus, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule, however, [Petitioner] must show that

1   a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent'

2   of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496).  Here, Petitioner does

3   not produce any evidence that would permit this Court to come to such a conclusion.  Consequently,

4   the Court finds that federal review of the claim is foreclosed by Petitioner's procedural default.

5         **B.**     **Ground Two:  Ineffective Assistance of Counsel**

6        Petitioner contends that his Sixth Amendment right to counsel was violated by failing to raise

7   an objection under *Bruton* to the admission of co-defendant's statement.  Petitioner's amended

8   petition also contains an additional ground for relief relating to his constitutional right to counsel.

9           *1.*     *Amended Claim*

10       In his amended petition, Petitioner included the additional claim that his counsel's failure to

11  call certain witnesses and make pretrial preparations amounted to ineffective assistance of counsel.

12  While Respondent has not raised any issues regarding exhaustion, the Court's review of Petitioner's

13  filings in the State court reveals that this claim was not presented to the State courts .[3] (Lod. Docs. 5,

14  7).

15          *a.*     **Exhaustion of State Remedies**

16       A petition for writ of habeas corpus shall not be granted unless "the applicant has exhausted

17  the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(a).  This exhaustion

18  requirement mandates that petitioners fairly present the federal claims raised in their federal habeas

19  petitioner before the state courts, including a state supreme court with powers of discretionary

20  review,  in order to afford the state courts the "opportunity to pass upon and correct alleged

21  violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see Duncan*

22  *v. Henry*, 513 U.S. 364, 365-66 (1995); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  " 'Fair

23  presentation requires that a state's highest court has a 'fair opportunity to consider...and to correct

24  [the] asserted constitutional defect."  *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008)

25  (quoting *Lounsbury v. Thompson*, 374 F.3d 785, 787 (9th Cir. 2004) (quoting *Picard*, 404 U.S. at

26

27       [3]The Court notes that Respondent was afforded the opportunity to file a supplement brief to the amended petition

28  but failed to do so.  (Court. Doc. 25).

276)).  Here, it is clear that Petitioner has not exhausted his state remedies.  Petitioner filed two

petitions with the California Supreme Court.  (Lod. Docs. 5, 7).  The petition for writ of habeas

corpus concerned ineffective assistance of *appellate counsel*.  (Lod. Doc. 7 at 6-7).  The petition for

review concerned trial counsel's failure to object on Confrontation Clause issues.  (Lod. Doc. 5 at

11-13).  Thus, the Court finds Petitioner has failed to exhaust his remedies in State court and

Petitioner cannot obtain habeas corpus relief on this ground.

### b.      Failure to Raise A Colorable Claim

An unexhausted claim may be denied on the merits if the claim is not colorable.  "An

application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State."  28 U.S. C. § 2254(b)(2).  The

Ninth Circuit has interpreted section 2254(b)(2) to allow a federal court to deny an unexhausted

petition on the merits "only when it is perfectly clear that the applicant does not raise even a

colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005), *cert. denied*, 546

U.S. 1172 (2006).

An allegation of ineffective assistance of counsel requires that a petitioner establish two

elements–(1) counsel' s performance was deficient and (2) petitioner was prejudiced by the

deficiency.  *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346

(9th Cir. 1994).   Under the first element, the petitioner must establish that counsel's representation

fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions

which did not fall within reasonable professional judgment considering the circumstances.

*Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption

that counsel's conduct fell within the wide range of reasonable professional assistance.  *Strickland*,

466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Petitioner must show that counsel's errors were so egregious that the petitioner was deprived

of the right to a fair trial, namely a trial whose result is reliable.  *Strickland*, 466 U.S. at 687.   To

prevail on the second element, the petitioner bears the burden of establishing that there exists "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

1   would have been different.  A reasonable probability is a probability sufficient to undermine

2   confidence in the outcome."  *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at

3   694).  A court need not determine whether counsel's performance was deficient before examining

4   the prejudice suffered by the petitioner as a result of the alleged deficiencies.  *Strickland*, 466 U.S. at

5   697.  Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any

6   deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective

7   assistance of counsel claim.  *Id.*

8          Here, Petitioner's claims center on counsel's failure to depose or secure the testimony of

9   Theodore Madden and Petitioner's brother prior to trial.  (Am. Pet. at 5h-5k).  Petitioner contends

10  that Mr. Madden would have testified that Petitioner was not in possession of the drugs found in the

11  motel room but that counsel's failure to timely secure his testimony resulted in Mr. Madden's

12  invocation of the Fifth Amendment.  (Id. at 5i).  Petitioner's contention that counsel should have

13  deposed the witness to secure his testimony prior to trial is clearly without merit.  California requires

14  that a witness be material and "is about to leave the state, or is so sick or infirm as to afford

15  reasonable grounds for apprehension that he or she will be unable to attend the trial, or is a person 65

16  years of age or older, or a dependent adult" or "there is evidence that the life of a witness is in

17  jeopardy" in order for either side to apply for the witness to be examined conditionally. Cal. Penal

18  Code §§ 1336(a)-(b).  Likewise, Petitioner's contention that had trial counsel contacted Mr. Madden

19  earlier, he would not have invoked his Fifth Amendment right is illogical as California's rules of

20  court provide that:

21         If a person is called as a witness and it appears to the court that the testimony or other
           evidence being sought may tend to incriminate the witness, the court must advise the
22         witness of the privilege against self-incrimination and of the possible consequences of
           testifying. The court must also inform the witness of the right to representation by
23         counsel and, if indigent, of the right to have counsel appointed.

24  Cal. R. Ct. 5.548(a).  Thus, even if Mr. Madden had agreed to testify, the trial court would have had

25  a duty to advise him of the privilege against self-incrimination.  In light of Mr. Madden invocation of

26  this right at trial, the contention that he would not have done so after the court had advised him of the

27  possible consequences of testifying is highly speculative and improbable.

28  \\\

1    Lastly, Petitioner contends that counsel's failure to timely interview his brother was

2  ineffective.  Petitioner contends that his  brother would have testified that he had just dropped

3  Petitioner off in the room and that he was the person who kept calling the cell phone.  (Am. Pet. at

4  5i).  Counsel's failure was not prejudicial as Petitioner's brother did in fact testify to all of the above

5  information at trial. (RT at 371-373).  Therefore, Petitioner has failed to present a colorable claim of

6  ineffective assistance of counsel.

7                       **2.      *Failure to Object***

8    Petitioner contends that his trial counsel's failure to object at trial to the introduction of co-

9  defendant's statement as attested to by Officer Mara was ineffective.  In order to prevail on this

10  claim, Petitioner would have to establish that there is "a reasonable probability that, but for counsel's

11  unprofessional errors, the result of the proceeding would have been different.  A reasonable

12  probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*,

13  78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694).  As noted *supra*, the California Court of

14  Appeal found that there was no prejudice as the admission of co-defendant's statement did not

15  undermine the appellate court's confidence in the outcome of the trial.  For the reasons state *supra*,

16  the Court agrees that the exclusion of the statement would not have resulted in a different verdict.

17  Thus, the Court finds that the California Court of Appeal did not unreasonably apply clearly

18  established federal law and Petitioner is not entitled to relief on this ground.

19                       **C.      *Ground Three: Upper Term***

20    Petitioner contends that the trial court's imposition of the upper terms violated his Sixth

21  Amendment right to a jury trial and Fourteenth Amendment right to due process of the law.[4]  (Lod.

22  Doc. 5 at 27-28).  Petitioner's argument stems from the clearly established federal law derived from

23  *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny.  In *Apprendi*, the United States

24  Supreme Court overturned a State sentencing scheme as violative of a criminal defendant's right to

25

26    [4]The United States Supreme Court has previously stated that, "the Due Process Clause of the Fifth Amendment and
the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum
27  penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones
v. United States*, 526 U.S. 227, 246 n. 6) (1999).  In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the Supreme Court
28  recognized that "[t]he Fourteenth Amendment commands the same answer."

1  have a jury verdict based on proof beyond reasonable doubt.  The sentencing scheme permitted a trial

2  judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon a finding by

3  a preponderance of the evidence that the defendant committed the crime with racial animus.  *Id*. at

4  469.  The Supreme Court held that the Sixth Amendment right to a jury trial required that "any fact

5  that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

6  jury, and proved beyond a reasonable doubt." *Id.* at 490.  In *Blakely v. Washington*, 542 U.S. 296,

7  303-304 (2004), the high court explained that the "statutory maximum" is the maximum sentence a

8  judge may impose based exclusively on the facts reflected in the jury verdict or admitted by the

9  defendant and not the maximum sentence a judge may impose after finding additional facts.

10       The United States Supreme Court subsequently found that the imposition of upper terms, as

11  delineated in California's Determinate Sentencing Law, based on facts found by a judge violated a

12  criminal defendant's constitutional rights.  *See Cunningham v. California*, 549 U.S. 270, 293 (2007)

13  (overruling *People v. Black*, 35 Cal.4th 1238 (2005)).  The *Cunningham* court noted that the middle

14  term specified in California's statutes was the relevant statutory maximum for the purpose of

15  applying *Blakely* and *Apprendi*.  The high court thus concluded that the imposition of the upper term

16  based solely upon a trial judge's fact finding violated the defendant's Sixth and Fourteenth

17  Amendment rights because it "assigns to the trial judge, not the jury, authority to find facts that

18  expose a defendant to an elevated 'upper term' sentence." *Id.* at 274.

19       "[T]he relevant question is not what the trial court *would* have done, but what it legally *could*

20  have done." *Butler v. Curry*, 528 F.3d at 648-649(emphasis in original).  As noted by the California

21  Court of Appeal, only one aggravating factor need to be proven for imposition of the upper term in

22  California.  *See. Black II,* 41 Cal.4th at 806; *Butler*, 528 F.3d at 642-643.  As noted by the California

23  Court of Appeals in Petitioner's case, the Supreme Court's holding in *Cunningham* contained an

24  exception permitting a trial court to use a prior conviction to impose the upper term.  (Lod. Doc. 4 at

25  7).  The appellate court noted that as a circumstances in aggravation, the trial court found that

26  Petitioner possessed prior convictions incurred while he was an adult.  (Id. at 8).  The appellate court

27  was correct that clearly established Supreme Court precedents permit the imposition of a term

28  beyond the prescribed statutory maximum based on a judge finding's of a prior conviction.  *See*

1  *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998) (holding that fact of prior conviction

2  need not be pleaded in an indictment or proved beyond a reasonable doubt).   As one of the factors

3  relied upon by the trial court in imposing the upper term was the existence of Petitioner's prior

4  convictions and only one factor is required to impose the upper term, the State court's finding was

5  not an objectively unreasonable application of clearly established federal law.  Petitioner is not

6  entitled to relief based on this ground.

7  **IV.    Certificate of Appealability**

8          A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

9  district court's denial of his petition, and an appeal is only allowed in certain circumstances.  *Miller-*

10  *El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue

11  a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

12  issue a certificate of appealability where "the applicant has made a substantial showing of the denial

13  of a constitutional right."  Where the court denies a habeas petition, the court may only issue a

14  certificate of appealability "if jurists of reason could disagree with the district court's resolution of

15  his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

16  encouragement to proceed further."  *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473,

17  484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate

18  "something more than the absence of frivolity or the existence of mere good faith on his . . . part."

19  *Miller-El*, 123 S.Ct. at 1040.

20          In the present case, the Court finds that reasonable jurists would not find the Court's

21  determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

22  deserving of encouragement to proceed further.  Petitioner has not made the required substantial

23  showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a

24  certificate of appealability.

25                                              **ORDER**

26          Accordingly, IT IS HEREBY ORDERED that:

27          1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

28          2. The Clerk of Court is DIRECTED to enter judgment; and

1          3. The Court DECLINES to issue a certificate of appealability.

2

3    IT IS SO ORDERED.

4    **Dated:     March 31, 2010**                        /s/ John M. Dixon
                                         UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court

E. D. California                              17